IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Direct Fitness Solutions, LLC,

    Plaintiff,

v.

Direct Fitness Solutions, LLC,

    Defendant.

No. 17 C 5316

**MEMORANDUM OPINION AND ORDER**

In this trademark infringement case, plaintiff—an Illinois entity that designs, installs, and services complete athletic fitness centers—alleges that defendant, a Florida entity that delivers, assembles, installs and repairs fitness equipment for clients primarily within Florida and not in Illinois, infringes its common law rights to the trademark and trade name "Direct Fitness Solutions" for its business. Before me is defendant's motion to dismiss for lack of personal jurisdiction and to find this case "exceptional" pursuant to 15 U.S.C. § 1117 (a). For the reasons that follow, I grant the motion.

According to the complaint, plaintiff is headquartered in Mundelein, Illinois. It claims common law rights in the asserted

1

mark based on its use of the mark for nearly twenty years in connection with its products in services. Plaintiff alleges that it has marketed its products and services under the mark "in connection with sales in Florida" since at least 2004. In or around July of 2013, defendant—a two-person company headquartered in Florida—began using the mark in connection with its own products and services. Cmplt. at ¶¶ 2, 3, 6, 9.

On May 16, 2017, plaintiff's counsel sent defendant a cease-and-desist letter. *Id.* at ¶ 11. Defendant attached this letter, along with the parties' ensuing exchange, to its motion to dismiss. The communications of record reveal the following:

Plaintiff's May 16 letter states that plaintiff has been using "Direct Fitness Solutions" as a trademark and trade name in connection with its business since 1998. The letter does not indicate the geographic scope of plaintiff's claimed use. It asserts, however, that defendant's use of the mark in connection with its business is likely to cause confusion among customers. Plaintiff demanded that defendant discontinue using the asserted mark and "refrain from using any other mark having the term "Fitness Solutions." Def.'s Mem., Exh. 1.

Defendant responded to plaintiff's letter through counsel on June 7, 2017. Defendant indicated that its "major area of business is in Florida," that it is "not in the business of designing fitness centers nor selling fitness equipment other

2

than to their (sic) own Florida clientele," and that it "does not market its services outside of Florida." Def.'s Mem., Exh. 2. Defendant observed that a "search of the trademark office website does not reveal any federal applications or registration for [plaintiff's] trademarks," and that plaintiff's website states that the company operates in Illinois, Indiana, Kentucky, Michigan, Northern Ohio, and Wisconsin. For these reasons, defendant expressed its view that the parties could "continue to coexist," with each using the mark in connection with its respective business in its respective geographical area. *Id.*

Plaintiff's response to defendant's letter does not dispute these facts, but it asserts that plaintiff "has substantial sales in Florida going back at least 15 years, as well as throughout most if not all of the rest of the country." Plaintiff asserts its belief that defendant "was specifically aware of both our client's trademark and our client's sales in Florida," but does not identify the basis for this belief. Without more, plaintiff reiterated its demand that defendant cease using the asserted mark and threatened to sue unless defendant: 1) paid plaintiff $50,000; 2) phased out use of the mark by August of 2017; and 3) changed its name to one that does not include the term "Fitness Solutions." Def.'s Mem. at Exh. 3.

Defendant did not accede to these demands. Instead, it observed that plaintiff had articulated no basis for its claim to

3

superior common law rights in Florida, noting that plaintiff was not registered to do business in Florida (according to Florida's Secretary of State's office), and that plaintiff had no federal registration for its asserted mark. Defendant stated, in addition, that it had never seen any advertisements for plaintiff's business in Florida and had never heard of plaintiff before it adopted its name in 2013. Accordingly, defendant reiterated its view that it—not plaintiff—held superior common law rights to the asserted mark in Florida and requested that plaintiff identify any authority supporting its contrary view. This lawsuit followed.

As defendant correctly notes, plaintiff's complaint alleges no factual basis for its assertion of personal jurisdiction. Defendant posits that this was a deliberate omission, since the parties' pre-suit communications made clear to plaintiff that there was no basis for personal jurisdiction in this district. In support of its motion, defendant offers the affidavit of its principal, Mr. Sellers, who states that his company has done no business in Illinois, does not promote its business in Illinois, and has not performed any work in Illinois. Plaintiff does not meaningfully dispute these facts, but it argues that personal jurisdiction is proper on the theory that defendant "transacted business" in Illinois by purchasing fitness equipment from an Illinois company for use in its Florida business, citing *John*

4

*Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 403-05 (7th Cir. 1987) and *Euromarket Designs, Inc.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000). But even assuming that defendant made the three purchases identified—more on that issue presently—these transactions fall far short of the "substantial contacts," communications, and contractual negotiations that led the court to exercise jurisdiction in *John Walker*. 821 F.2d at 405. Nor does plaintiff claim that in addition to these purchases, defendant participated in trade shows in Illinois or advertised in publications circulated in Illinois, as was the case in *Euromarket*. 96 F. Supp. 2d at 829. Ultimately, however, I need not examine the importance of these factual distinctions to the jurisdictional analysis because the facts on which plaintiff rests its "transaction of business" jurisdictional theory finds no support in the evidence.

Plaintiff submits the affidavit of its president, Mr. Green, who states that defendant "purchased exercise equipment for its business" from TAG, a third party Illinois company that Mr. Green owns. As proof of these purchases, Mr. Green attaches to his affidavit three invoices he describes as "showing that the equipment was purchased from TAG in Illinois," copies of which defendant "would have received." Green Decl., Exh. 1, ¶ 4. What these invoices show on their faces, however, is that TAG billed a Missouri company called EHFS for "pre-paid" equipment to be

shipped to defendant in Florida. Reinforcing the inference that EHFS—not defendant—made these purchases, the "Customer Phone" and "Customer Fax" fields on each invoice contain numbers in the 314 area code, which is associated with St. Louis. Accordingly, while the invoices arguably support Mr. Green's carefully worded statement that the equipment "was purchased from TAG in Illinois," nothing about them suggests that *defendant* made the purchases. Indeed, neither the invoices themselves nor Mr. Green's declaration amounts to competent evidence that defendant transacted any business at all with an Illinois company.

Plaintiff's second theory is that personal jurisdiction over defendant is proper because defendant "expressly aimed" its intentionally tortious misconduct at Illinois. Plaintiff relies on *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790 (N.D. Ill. 2016), and *Aweida Arts, Inc. v. Pure Glass Distribution, Inc.*, 157 F. Supp. 3d 936 (W.D. Wash. 2015), but neither case is remotely comparable. In the former, the defendant "initiated a dialogue with IPOX, sought out its services, and began developing a relationship with it" before turning around and using a mark defendant knew IPOX owned in connection with its own services. 191 F. Supp. 3d at 800. In the latter, the alleged infringer intentionally created the false impression that its product was associated with the plaintiff's by including a

Facebook link to the plaintiff's product on its own website. 157 F. Supp. 3d at 936.

Here, by contrast, there is no evidence—beyond plaintiff's unsupported "belief"—that defendant was aware of plaintiff, its products or services, or its use of the asserted mark at any time prior to receiving plaintiff's cease and desist letter. Indeed, the sworn testimony of Mr. Sellers is to the contrary. This case is much more closely akin to *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 447 (7th Cir. 2010), in which the Seventh Circuit upheld a dismissal for lack of jurisdiction because the only evidence of the defendant's "express aiming" at Illinois was its receipt of the plaintiff's cease and desist letter. The court explained that to find "express aiming" on that basis "would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is. *Calder* [*v. Jones*, 465 U.S. 783 (1984), another case on which plaintiff relies] requires more." *Id.* Even a cursory review of *Mobile Anesthesiologists* should have discouraged plaintiff from arguing the "express aiming" theory of personal jurisdiction on the facts here.

Although the deficiencies in plaintiff's theories of personal jurisdiction are sufficient to warrant dismissal, they do not alone make this case "exceptional." I agree with

7

defendant, however, that the absence of factual or legal support for plaintiff's theories, coupled with plaintiff's distinctly coercive pre-litigation tactics, raises an inference that plaintiff filed suit in this forum not because it believed it had a colorable trademark claim against a defendant it reasonably believed to be subject to personal jurisdiction here, but instead because it saw defendant as easy prey, susceptible to quick settlement if threatened with litigation. Its flimsy response to defendant's motion reinforces that impression.

In *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010), the Seventh Circuit held that a suit qualifies as "exceptional" for purposes of the Lanham Act if it is "objectively unreasonable"—meaning that a rational litigant would pursue it "only because it would impose disproportionate costs on his opponent"—and includes "elements of an abuse of process claim." *Id*. at 965, 960. The record here shows that this case fits that bill. To recap: plaintiff sent defendant a cease and desist letter claiming superior common law rights—with no geographical restriction—in the asserted mark. When defendant responded with its evidence-based view that it, not plaintiff, had superior rights in Florida, and that each party could continue to use the mark in its own geographical region, plaintiff—without meaningfully disputing the legal or factual basis for defendant's contentions—persisted in its claim

to superior rights and threatened suit unless defendant agreed to pay it $50,000 and cease using the mark. When defendant did not agree, plaintiff sued in this district, omitting from its complaint any facts to support the exercise of personal jurisdiction, and despite defendant's representations that its "major area of business is in Florida," and that it did not market its services outside of that state. After defendant moved to dismiss, plaintiff responded by asserting untenable legal theories based on factually inapposite cases and facially deficient evidence.

It is true that plaintiff could refile its claims against defendant in Florida, and that a dismissal on jurisdictional grounds is not a decision on the merits. But in *CRST Van Expedited, Inc. v. Equal Employment Opportunity Commission*, -- U.S.--, 136 S. Ct. 1642 (2016), the Court held that a party need not prevail on substantive grounds to qualify as a "prevailing party" for purposes of awarding attorneys' fees, and that what matter is whether the decision effects a "material alteration in the legal relationship between the parties." *Id*. at 1651-52. Defendant argues persuasively that that criterion is satisfied here, as defendant has achieved the "enduring victory" of barring plaintiff from proceeding further on its claims in this venue. *Noxell Corporation v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 525 (D.C. Cir. 1985) (affirming dismissal of trademark

9

infringement action for improper venue and finding the case "exceptional" based on the plaintiff's "choice of a distant forum and its mode of proceeding," which suggested "more than a hint of economic coercion.") (internal quotation marks and citation omitted).

For the foregoing reasons, defendant's motion to dismiss and for a finding that this case is "exceptional" under the Lanham Act is granted. Defendant is directed to submit, by November 30, 2017, a proposed order along with itemization of its fees and accompanying evidence to support its fee request.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated: November 16, 2017